UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CITY NATIONAL BANK and RA SOUTHEAST LAND COMPANY, LLC,<br><br>Appellants,<br><br>v.<br><br>CHARLESTON ASSOCIATES, LLC,<br><br>Appellee. | Case No. 2:11-cv-02023-MMD-PAL<br><br>ORDER<br><br>(Appellee's Motion to Stay Pending Appeal – dkt. no. 72;<br>Appellee's Motion for Entry of Order Directing Bankruptcy Court to Vacate Judgment – dkt. no. 83;<br>Appellant's Motion to Strike Notice – dkt. no. 91) |

**I.   SUMMARY**

Before the Court are Appellee Charleston Associates, LLC's ("Charleston") Motion to Stay Pending Appeal ("Motion to Stay") (dkt. no. 72) and Motion for Entry of Order Directing Bankruptcy Court to Vacate Judgment ("Motion to Vacate") (dkt. no. 83). Also before the Court is Appellant RA Southeast Land Company, LLC's ("RAS") Motion to Strike Notice ("Motion to Strike"). (Dkt. no. 91.)

For the reasons set forth below, Charleston's Motion to Stay is denied and its Motion to Vacate is granted. RAS's Motion to Strike is denied as moot.

**II.   BACKGROUND**

The factual background of this action is fully set out in the Court's Order entered July 25, 2013 ("Reversal Order"). (Dkt. no. 70.) The Reversal Order reversed the United States Bankruptcy Court for the District of Nevada's ("Bankruptcy Court") December 1, 2011, Supplemental Order on Summary Judgment Motions and remanded with instructions to award summary judgment in favor of City National Bank ("CNB") and RAS. (*Id.*)

On August 15, 2013, Charleston filed the Motion to Stay requesting a stay of the Reversal Order without a bond requirement pursuant to Fed. R. Bankr. P. 8017(b) and a stay of the Bankruptcy Court's mandate under LR 8016. (Dkt. no. 72.) CNB and RAS separately filed oppositions. (*See* dkt nos. 81; 82.)

Charleston filed a notice of appeal on August 23, 2013. (Dkt. no. 78.) On August 26, 2013, the Bankruptcy Court entered judgment in favor of CNB and RAS as directed by the Court in the Reversal Order. (*See* dkt. no. 83 at 1–2.) On September 4, 2013, Charleston moved to vacate the Bankruptcy Court's August 26, 2013, order. (Dkt. no. 83.)

### III.   MOTION TO STAY

#### A.   Legal Standard

Fed. R. Bankr. P. 8017 governs stays of district court judgments in the bankruptcy context pending appeal to the court of appeals. Fed. R. Bankr. P. 8017(a) imposes an automatic stay of "[j]udgments of the district court . . . until the expiration of 14 days after entry, unless otherwise ordered by the district court." The Court may extend this automatic stay for up to 30 days "after the entry of the judgment of the district court . . . unless the period is extended for cause shown." Fed. R. Bankr. P. 8017(b). If a stay is entered by the Court under Rule 8017(b) and the moving party appeals within the 30-day period, "the stay shall continue until final disposition by the court of appeals." Fed. R. Bankr. P. 8017(b).

In deciding a stay pending appeal of a district court's order under Rule 8017(b), courts in the Ninth Circuit use the same standard as when deciding whether to grant a preliminary injunction or stay pending appeal of a bankruptcy court's order under Fed. R. Bankr. P. 8005. *See In re Woodcraft Studios, Inc.*, No. C–11–3219, 2012 WL 160225, at *1 (N.D. Cal. Jan. 18, 2012) (*citing In re Pacific Gas and Elec. Co.*, No. C–02–1550, 2002 WL 32071634, at *2 (N.D. Cal. Nov. 14, 2002); *In re Red Mountain Machinery Co.*, 451 B.R. 897, 899 (Bankr. D. Ariz. 2011)). The standard requires showings that: (1) appellant is likely to succeed on the merits; (2) irreparable harm will occur absent a stay;

(3) appellee will not be substantially harmed by a stay; and (4) the public interest will not be harmed by a stay. *See In re Whipple*, 3:13-cv-00251, 2013 WL 4506157, at *1 (D. Nev. Aug. 21, 2013) (*citing In re Wymer*, 5 B.R. 802, 806 (B.A.P. 9th Cir.1981); *see also In re Woodcraft Studios*, 2012 WL 160225 at *1 (*citing Nken v. Holder*, 556 U.S. 418, 434 (2009)).

### B. Analysis

#### 1. Likelihood of success on the merits

The Ninth Circuit has held that in order to show likelihood of success on the merits, an appellant seeking a stay pending appeal must show "that she has a substantial case for relief on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011). A movant need not, however, "demonstrate that it is more likely than not that [he or she] will win on the merits." *Id.* at 966. The Supreme Court has held that "[i]t is not enough that the chance of success on the merits be 'better than negligible," and that "[m]ore than a mere 'possibility' of relief is required." *Nken*, 556 U.S. at 434 (internal quotation marks and citations omitted).

In considering Charleston's appeal, the Ninth Circuit will review the bankruptcy court's decision "independently without deference to the district court's determinations." *In re Strand*, 375 F.3d 854, 857 (9th Cir. 2004) (*citing Galam v. Carmel (In re Larry's Apt., L.L.C.)*, 249 F.3d 832, 836 (9th Cir.2001)). "The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo." *Id.* (citation omitted). This is the same standard adopted by the Court in its review of the Bankruptcy Court's decision. (*See* dkt. no. 70 at 6.)

Charleston argues that it is likely to succeed on appeal because the Settlement Agreement is reasonably interpreted as not having transferred the Declarant Rights to CNB or is at least ambiguous to that point. (Dkt. no. 72 at 4.) Section 2.1(a) of the Settlement Agreement provides that CNB will "foreclose or cause the occurrence of a deed of trust sale with respect to the Deed of Trust." As discussed in the Reversal Order, the Deed of Trust granted CNB a security interest in the Trust Estate, which expressly

includes Declarant Rights. (*See* dkt. no. 70 at 12.) The Court thus concluded in its Reversal Order that CNB's foreclosure transferred the Declarant Rights to CNB. Charleston argued in its appeals brief, and argues here again, that the Settlement Agreement defines "Property" as real property and that other sections of the Settlement Agreement refer to CNB's "foreclosure of the Property." (*See* dkt. no. 72 at 5.) They thus assert that the language "with respect to" in Section 2.1(a) means that CNB's foreclosure concerns or relates to only the real property portion of the Deed of Trust and not the Declarant Rights or the rest of the collateral. (*See id.* at 6.)

As the Court explained in the Reversal Order, Charleston's interpretation is contrary to the express language of the Settlement Agreement, which does not limit CNB's foreclosure sale to the real property. It is not reasonable to interpret the phrase "with respect to the Deed of Trust, in accordance with applicable state law" as concerning or relating to only the real property identified in the Deed of Trust, and not the entire Trust Estate. The Deed of Trust operates as a security agreement between the parties to the loan and the Declarant Rights were pledged as collateral. There is nothing in the Settlement Agreement that would suggest that CNB intended to only foreclose on the real property and leave the remaining collateral in the hands of Charleston. While Sections 2.1(c) and 2.2 refer to the "foreclosure sale of the Property" or "foreclosure of the Property," that language does not alter the explicit language in Section 2.1(a).

Charleston also argues that they are likely to succeed because "the only evidence of record demonstrates that Charleston transferred the Declarant Rights" before borrowing from CNB. (Dkt. no. 72 at 4.) Even taking that as true, Charleston's alleged unrecorded transfers are not valid against CNB or RAS under Nevada state law. (*See* dkt. no. 70 at 10.) Charleston has therefore failed to demonstrate "a substantial case for relief on the merits." *Leiva-Perez*, 640 F.3d at 968.

### 2. Irreparable harm to Charleston

In considering a stay pending appeal, "the required degree of irreparable harm increases as the probability of success decreases." *Golden Gate Restaurant Ass'n v.*

*City and County of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008). Charleston argues that it would be "extremely disruptive" if the Declarant Rights were shifted to RAS pending the appeal. (*See* dkt. no. 72 at 12). They argue that "[s]tore and restaurant owners would have to be notified; escrow accounts would have to be closed; Charleston's lenders . . . would have to consent to a release of the deposit and trust accounts; and longstanding relationships with service providers would be broken." (*Id.*) Charleston argues that "a change (even if only temporary) in the party performing the Declarant duties can only damage such relationships." While the Court recognizes that there will be a change in management of the Shopping Center, including the Boca Fashion Village, Charleston has failed to demonstrate that a change in management will result in the harms it identifies. Even if those harms were to manifest, Charleston offers no reason why these relationships cannot be mended should they succeed in their appeal.

While Charleston also argues that RAS's development will harm businesses at Boca Fashion, money damages alone do not constitute irreparable harm. *See e.g.*, *Lydo Enter., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir.1984). Charleston states that RAS's proposed development will be "architecturally out of sync" with Boca Fashion and that RAS's approval of its own development plans would "arguably be irrevocable." But Charleston does not explain why RAS's actions would be irrevocable. If it succeeds on appeal, Charleston will regain possession of the Declarant Rights and will assume all related management rights and obligations. To the extent that RAS wants to develop the land in a way that may be unacceptable to Charleston if Charleston succeeds on appeal and regains the Declarant Rights, then RAS bears that risk.

As Charleston has failed to demonstrate both likelihood of success on the merits and irreparable harm, the motion to stay is denied.

## IV. MOTION TO VACATE

In its Motion to Vacate, Charleston seeks to not only vacate the Bankruptcy Court's judgment but to challenge this Court's authority to enforce its order by issuing the

mandate after addressing Charleston's Motion to Stay. The Court agrees with Charleston's former request but finds its latter request unavailing.

Bankruptcy Court LR 8016 states that the Court will electronically serve a certified copy of an order on the Bankruptcy Court. This electronic service is a "mandate" under the rule, and it is to be issued "seven days after the time to file a motion for rehearing expires." See LR 8016(a); LR 8016(d). That makes for a total of 21 days before the Court may issue a mandate under LR 8016 because a motion for rehearing can be filed within 14 days of the entry of an order pursuant to Fed. R. Bankr. P. 8015. Where a motion to stay the mandate or a motion to stay pending appeal under Fed. R. Bankr. P. 8017(b) is filed before the mandate is issued, then the mandate is automatically stayed until the Court resolves those motions. See LR 8016(b). Charleston argues that its Motion to Stay was filed before 21 days elapsed and, consequently, the mandate was automatically stayed pending the Court's decision on that motion. Charleston further argues that the mandate returns jurisdiction to the Bankruptcy Court and, without it, the Bankruptcy Court did not have the jurisdiction to enter judgment as directed by the Reversal Order.

The Court agrees. The clear language of LR 8016 states that "[u]nless [the Court] orders otherwise, the mandate is stayed" until the Court resolves pending motions to stay. See LR 8016(b). On July 25, 2013, the Reversal Order was electronically served on the Bankruptcy Court. (See dkt. no. 70.) While this service complied with the requirements of Fed. R. Bankr. P. 8016, it did not comply with LR 8016's mandate requirements because it was served upon entry of the Reversal Order, and not 21 days after the entry of the Reversal Order. Charleston filed the Motion to Stay before 21 days had passed and thus the mandate was stayed pending the Court's decision on Charleston's Motion to Stay. Because the mandate was automatically stayed, the Bankruptcy Court did not have jurisdiction to enter its judgment. The Bankruptcy Court's earlier judgment should therefore be vacated.

///

Charleston further argues that the Bankruptcy Court may not enter judgment in compliance with the Reversal Order because the Notice of Appeal divested the Court and Bankruptcy Court of jurisdiction. If the Court accepts Charleston's premise, then the Court is unable to transfer jurisdiction to the Bankruptcy Court and the issuance of a mandate upon resolution of the Motion to Stay would be an empty gesture. The Court disagrees with Charleston's view and finds that it may issue the mandate and the Bankruptcy Court may enter judgment as directed in the Reversal Order. It is well-established that "an appeal will not affect the validity of a judgment or order during the pendency of the appeal, absent a stay or supersedeas[.]" *See, e.g., In re Combined Metals Reduction Co.*, 557 F.2d 179, 190 (9th Cir.1977). A district court "has jurisdiction to take actions that preserve the status quo during the pendency of an appeal[.]" *See In re Padilla*, 222 F.3d 1184, 1190 (9th Cir. 2000) (citations omitted). It is the Reversal Order that is being appealed to the Ninth Circuit, not the Bankruptcy Court judgment. (*See* dkt. nos. 78; 85.) The Reversal Order reversed the judgment of the Bankruptcy Court and directed the Bankruptcy Court to enter judgment in favor of RAS and CNB. The Court may issue a mandate to the Bankruptcy Court so that it may enter judgment in compliance with the Reversal Order. This does not change the status quo as Charleston argues; rather it maintains the status quo that was set by the Reversal Order.

If the Court adopted Charleston's position that the Court may not issue its mandate and the Bankruptcy Court may not enter judgment in compliance with the Reversal Order, it would lead to an absurd result where any reversal of a bankruptcy court judgment by a district court would be effectively stayed the moment a notice of appeal is filed. Such a result would be contrary to the rule that a district court's order is effective and enforceable pending appeal unless a stay is issued. *See, e.g, In re Combined Metals Reduction Co.*, 557 F.2d at 190. The district court would be required to race to issue its mandate and enforce its order before the order is appealed. If the district court were to time the issuance of its mandate incorrectly, the prevailing party would be denied the benefit of the court's judgment until the completion of another round of

appeals. Finally, Charleston's position cannot be squared with a movant's burden to make certain showings before a district court can grant a stay. See *Nken*, 556 U.S. at 433-34 (the granting of a stay is "an exercise of judicial discretion" and "[t]he party requesting a stay bears the burden of showing that the circumstances justify and exercise of that discretion") (citations omitted). The Court will therefore issue the mandate in compliance with LR 8016 and the Bankruptcy Court is instructed to vacate its prior judgment and enter judgment as directed in the Reversal Order.

## V.  MOTION TO STRIKE

Charleston's Notice of Supplement to Reply describes and attaches a motion for temporary restraining order that RAS filed in an action involving the same parties in Nevada state court. (Dkt. no. 89.) Charleston introduces this material in order to show that RAS is not able to move forward with its development plans until the Ninth Circuit decides the appeal. RAS moves to strike this material or, in the alternative, be permitted to respond to it. (Dkt. no. 89.) The Court has reviewed the material and finds that it does not affect the Court's analysis or decision to deny the Motion to Stay. A response from RAS is therefore not necessary and the motion to strike is moot.

## VI.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion or reconsideration as they do not affect the outcome of the motions at issue.

It is hereby ordered that Appellee Charleston's Motion to Stay (dkt. no. 72) is denied.

It is further ordered that Appellee Charleston's Motion to Vacate (dkt. no. 83) is granted. The Bankruptcy Court's judgment entered on August 26, 2013 is vacated.

It is further ordered that Appellant RAS's Motion to Strike (dkt. no. 91) is denied as moot.

///

The Clerk is ordered to issue a mandate to the Bankruptcy Court in compliance with LR 8016. The Bankruptcy Court is ordered to vacate its August 26, 2013, judgment and enter judgment in compliance with the Court's Reversal Order.

ENTERED THIS 5th day of November 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE